CHARLOTTE EASTMAN ET AL *v.* WYATT LUMBER Co. ET AL.

[59 South. 93.]

1. QUIETING TITLE. *Cloud on title.   Bill.   Title deraigned.   Vendor and vendee.   Contract.   Release of vendee.   Code 1906, sections 550 and 551.*

   A bill in chancery filed by the owner of real estate to cancel a conveyance for the sale of certain timber land, as a cloud upon his title comes within the provisions of Code 1906, sections 550-551, and complainant must set forth in his bill the deraignment of his title and a mere statement that he is the owner of the land is not sufficient.

2. VENDOR AND VENDEE. *Contract.   Release of vendee.*

   Where a contract for the sale of lands contained the provision that "all lands, titles to which are not perfected by September 1, 1910, the second party (the vendee) is released from buying," such provision was manifestly intended for the benefit of the vendee, if the vendee should insist upon the performance of the contract and not elect to be released, and the vendee was entitled to waive such condition and insist on the vendor's performance as to such lands.

APPEAL from the chancery court of Pearl river county. HON. R. E. SHEEHY, Chancellor.

Bill by Charlotte Eastman et al. against the Wyatt Lumber Company et al. for the cancellation of certain contracts for the sale of lands. From a decree for defendants, complainants appeal.

The bill in this case was filed by the appellants, and alleged that complainants and defendants entered into two certain agreements, bearing date July 5, 1905, referred to as Exhibits A and B to bill of complaint, whereby it was agreed that complainants should convey to defendants timber lands as soon as title could be perfected, suit then being pending in the federal court for the purpose of adjudicating complainants' title; that complainants had diligently pursued said litigation in

an effort to bring it to a successful conclusion on or before the 1st day of September, 1910, the date when complainants' contract with defendants should expire; that, not having done so, complainants being unable to convey a perfect title to said lands complainants claim the right to be released from the contract, as defendants, by the terms of the contract, were released from purchasing same. The bill further avers that complainants are the real owners of the land, and are now in full possession of the same, subject to whatever rights the defendants have by virtue of said contract, which complainants ask to be canceled, and that defendants be enjoined from setting up any claim to the lands described in the bill.

The two contracts referred to are as follows:

Exhibit A: "Whereas, the parties of the first part claim to be the owners of a certain lot of lands, located in Lamar and Pearl River counties, Mississippi, the titles to which are not perfect and in litigation; and whereas, it is the desire and intention of the parties of the first part to prosecute said litigation to a final conclusion in order to perfect the title to said lands; and whereas, the party of the second part is desirous of purchasing said lands *when said litigation is concluded and titles perfected*: Now, therefore, the parties hereto agree as follows: (1) The parties of the first part agree to sell, assign, and convey by good and efficient warranty deed, upon payment to them to be made as hereinafter stated, all of the lands in Lamar and Pearl River counties, described as follows, to-wit: [Here follows description of land.] The party of the second part hereby agrees to purchase all of said lands and pay for same at the rate of twelve dollars and fifty cents ($12.50) per acre *when* the title is approved by Bowers, Neville & Griffith, attorneys at law, Gulfport, Mississippi. The parties of the first part agree that they will use all diligence in perfecting said title and speedily terminating the liti-

gation in connection therewith.  The parties of the first part further agree that they will terminate the aforesaid litigation by September 1, 1905.  If said litigation is not then terminated, said parties of the first part agree to finally terminate same and perfect the titles to said lands to the satisfaction of Bowers, Neville & Griffith on or before September 1, 1910.  The first parties agree to sell and the second parties agree to buy at twelve dollars and fifty cents ($12.50) per acre, plus two per cent (2%) interest per annum after September 1, 1905, the said lands upon which the titles are not perfected, as above, by September 1, 1905. *All lands, titles to which are not perfected by September* 1, 1910, the second party is released from buying.  The taxes on all of the aforelands are to be paid by the parties of the first part until such time as the title is approved by Bowers, Neville & Griffith.''

Exhibit B:  ''Agreement, made this 5th day of July, A. D. 1905, between Charlotte H. Eastman and Sidney C. Eastman, her husband, of Kenilworth, county of Cook, and state of Illinois, parties of the first part, and the Wyatt Lumber Company, a corporation of the state of Illinois, party of the second part, witnesseth:  Whereas, the parties of the first part claim to be the owners of a certain lot of lands located in Lamar and Pearl River counties, state of Mississippi, the titles of a portion of which are in controversy with certain adverse claimants, and certain other portions of which have not been examined and inspected by the timber inspectors of said party of the second part; and whereas, it is the desire and intention of the parties of the first part to perfect such titles to said lands as may be in controversy, and it is the desire of the party of the second part to examine such lands with a view of purchasing the same; and whereas, the party of the second part is desirous of purchasing such of said lands as have merchantable timber thereon, and to which the parties of the first part shall

established title which will be approved by Messrs. Bow-
ers, Neville & Griffith, attorneys at law, Bay St. Louis,
Mississippi: Now, therefore, the parties hereto agree
as follows: First. The parties of the first part agree
to sell and convey by warranty deed, upon payment to
them to be made as hereinafter stated, such portions of
the following described lands, situated in Lamar and
Pearl River counties, state of Mississippi as the parties
of the first part can establish good title to, which the par-
ty of the second part shall not find have been depredated,
to-wit: [Here follows description of the lands.] Second.
The party of the second part hereby agrees to purchase
all or any part of said lands which shall not be found to
be depredated, at the rate of twelve dollars and fifty cents
($12.50) per acre, when the title is approved by Bowers,
Neville & Griffith, attorneys at law, Bay St. Louis, Miss-
issippi, and as soon as the same have been examined by
their agents. Third. The party of the second part
hereby agrees to purchase such of said lands as have
been partially depredated, and pay for same at the rate
of two dollars per thousand stumpage, for all timber
twelve inches and upwards now standing on said lands;
said payment to be made when the title is approved by
said Bowers, Neville & Griffith. Fourth. The parties of
the first part agree that they will use all diligence in
perefecting said title, and will perfect all which can be
perfected on or before September 1, 1910, and the par-
ty of the second part agree to use all diligence in ex-
amining said lands. Lands, title to which are not per-
fected by September 1, A. D. 1910, the second party is
released from buying. Fifth. The first parties agree
to sell, and the second party agrees to buy, at twelve
dollars and fifty cents ($12.50) per acre, plus two per
cent (2%) interest per annum, after September 1, 1905,
such portions of the said lands accepted by them upon
which the titles are not perfected as above by September
1, 1905. Sixth. The taxes on all of the aforesaid lands

are to be paid by the parties of the first part until such
time as the title to the same is appoaved by Bowers, Ne-
ville & Griffith.''

The defendant filed the following demurrer, which was
sustained by the court: ''The demurrer of the Wyatt
Lumber Company, a corporation, by its solicitor, to the
bill exhibited against it in the above entitled and num-
bered cause: The said defendant demurs to said bill,
and prays the judgment of the court if it shall make any
further answer thereto; and it shows the following
causes of demurrer to said bill, to wit: First. Because
complainants do not deraign their title, as required by
section 551, Code 1906, and do not show that they are the
rightful owners of the paramount title, but, on the con-
trary, do show by their said bill that their claim of title
is a disputed one, is now, and has for several years been,
in litigation so serious and stubborn as to be yet pend-
ing in the Circuit Court of the United States; that their
said title is 'still unperfected, and *non constat* may pos-
sess a fatal infirmity, and the complainants own no title
or interest in said lands whatever. Second. Because
the doctrine of the common sourse title does not apply
to a common source title which is so infirm as admitted
in said bill, and may transpire by the judgment of
another court of competent jurisdiction, in which same
was pending before the filing of this bill, to be utterly
invalid, and of no effect and one in which
complainants have and have had no actual right, title, or
interest of any kind whatever. Third. Because said suit
is prematurely brought, and because it is not shown,
and cannot be now be shown, by complainants that any
assertion of title by defendants to said land from any
source constitutes any cloud upon any valid or para-
mount title of complainants. Fourth. Because the pe-
riod of time fixed in said contracts, to wit, September
1, A. D. 1910, at the end of which said defendant should
be released from its obligation to purchase said lands,

in case the titles thereto of complainants should not by that time be perfected, is a stipulation wholly at the election of defendant, and the said contract being mutual and supported, not only by said mutuality, but by the consideration of and the purchase of and payment for parts of the said land by defendant as shown by said bill, complainants cannot of their motion take advantage of their failure to comply with said contract and perfect said titles by said date, so long as defendant is still willing to take and pay, with interest, for said lands when said titles thereto are perfected, if said titles can, at the end of the litigation in the Circuit Court of the United States regarding same, be perfected. And defendant, by insisting, as alleged in said bill, on taking said lands when titles are perfected, if they can be, waives said stipulation as to the period of time in said bill, and to the contrary of complainants' allegation that defendant is not bound, defendant is bound, as a matter of law, and neither complainants nor defendants can be released without the joint consent of each. Fifth. Because of other reasons to be shown on the hearing.''

*Mayes & Longstreet,* for appellants.

When the agreements are analyzed, it will be seen that in fact and truth not a single piece of land was certainly bargained for in them; true certain lands were listed, but of all the list, not one single piece was certainly bargained for. To each listed piece was coupled a condition, as part of its description, that the title should be settled and approved on or before September 1, 1910. Such as did not fall within that class were not bargained for; as to them, says the contract, the vendee is released (here and now) from buying. The stipulation was immediately and automatically operative. True, it remained for subsequent development to demonstrate the scope of its operation, to show what particular lands should fall within its operation; but that was a mere

matter of identification; the scope of the contract's obligation was determined, limited and fixed then and there. Vendees cannot now and because it sees its profit in doing so, by a so-called waiver, dispense with and revoke its own express exclusion from that obligation; make a contract for the vendor which they never made; impose on them a greater burden, and retroactively tie up their hands for five years. During the whole of that five years, the vendors have a perfect right to look over the country, and find a purchaser who would take quitclaim deeds and the chance for and on such lands as they should not be entitled to tender to the vendees under their agreement on September 1, 1910. But here, by a so-called waiver, made after the fact, the vendees would deprive them of that right. It cannot be done, under the laws of this particular contract.

In *Kentucky Company* v. *Warwick Company,* 109 Fed. 280-282, it is said that:

"There can be no question that parties may make time of the essence of a contract in the sale of property. They may do this by express stipulations, or the intent so to do may be gathered from the nature of the property itself. This principle is too well established to need extended citations of authorities to support it. *Waterman* v. *Banks,* 144 U. S. 403."

*Hipwell* v. *Knight,* 1 Young & Collier (exchequer) 401, is an illuminative case. In it there was an agreement for the sale of lands with a stipulation that good title should be made by the vendor by July 23rd, and that "if the title shall not be perfected within the time aforesaid, the said John Knight (i. e. vendee) "shall be released from his contract," etc. Baron Alderson said:

"If, therefore, the thing sold be of greater or less value according to the effluxion of time, its is manifest that time is of the essence of the contract; and a stipulation as to time must then be literally complied with in equity, as well as in law. The cases of the sale of stock,

and of a reversion, are instances of this. So also if it appears that the object of one party, known to the other, was that the property should be conveyed on or before a given period, as the case of a house for residence, or the like. I do not see therefore why, if the party choose, even arbitrarily, provided both of them intend so to do, to stipulate for a particular thing to be done at a particular time, such a stipulation is not to be carried literally into effect in a court of equity. That is the real contract. Parties have a right to make it. Why, then, should a court of equity interfere to make a new contract, which the parties have not made? It seems to me, therefore, that the conclusion at which Sir Edward Sugden, in his valuable treatise on this subject, has arrived, is founded in law and good sense.''

The question of waiver arose in that case; but note that the waiver was set up and relied on by the vendor, in order to hold the vendee liable because of his own waiver; not, as is here most singularly attempted by the vendee itself, who sets up its own so-called waiver, to enlarge its own rights and to hold the vendor liable—an essentially different attitude.

On a question of waiver, moreover, a further difference between that case and this is, that in the Hipwell case the contract was not wholly executory but was partly executed even before the agreement was finally made and the waiver was by a prompt letter, of date July 25th, showing a continuance of claim by the vendees.

In cases for the specific performance of contracts (and that would be the attitude of appellee if it were plaintiff) the courts are clear and emphatic on the proposition that, one cannot hold back his decision, and thereby speculate on the chances of gain. *Alley* v. *Deschamps*, 13 Vesey Jr., 225; *Rogers* v. *Saunders*, 16 Maine, 92, 99, 100.

Yet here, this is exactly what appellee is trying to do, under pretense of a ''waiver.'' In July, 1905, it was

careful to stipulate in the writing that of the lands listed
for purchase it "is released from buying" those to
which the title is not made good by September 1, 1910.
The time, more than five years, elapses, with diligent ef-
fort on the part of vendors to make their titles good,
and failure therein without their fault. It is not their
default. If the land had depreciated in value appel-
lees would have refused them without doubt; but they
have appreciated and now appellees demand that ven-
dors should continue to labor, to harass themselves, to
pay counsel and bear the burdens of litigation, for their
exclusive benefit and for an indefinite time—in the teeth
of their clear contract that on September 1, 1910, they
are released from buying. Appellees call it a waiver,
but it is so only in guise; in effect, it is an attempt by
appellees' one sided action, after the fact, to extend the
liability of the vendors beyond what was bargained for
in the outset.

The fact is that this so-called waiver of the appellee
was, in its legal substance, no more nor less than an offer
to make a new supplemental agreement with vendors
about those unperfected lands which vendors could ac-
cept or not as they might please.

It is manifest that in the outset the vendors were not
bound by the agreement of July, 1905, to convey to ven-
dees such of the land as vendors could not make title
to on or by September 1, 1910. The agreement expressly
stipulated that as to them the vendee "is released from
buying;" that is, the vendees never did agree to buy
them and to say that the agreement bound the vendors
to convey what the vendees declined to buy, *uno flatu,*
is to make the agreement, as to this, void for want of
mutuality. And the attempt now (or after September
1, 1910) to make the agreement of different effect, to
make it carry those unperfected lands, by a parol, so-
called, one-sided "waiver," is patently an attempt to
vary it and an effort to contravene the statute of frauds,

102 Miss.—21.

29 Am. & Eng. Ency. Law, p. 1101, and notes; *Lawyer v. Post,* 109 Fed. 512; *McConathy* v. *Lanham,* 116 Ky. 735; *Platt* v. *Butcher,* 44 Pac. 1000; *Blood* v. *Goodrich,* 9 Wend. 68; *Clark* v. *Guest,* 54 Ohio St. 298; *Ladd* v. *King,* 1 R. I. 224; *Atle* v. *Bartholomew,* 69 Wis. 43.

We shall consider the remaining ground of demurrer very briefly. They all turn on one central idea, to wit, that this is a bill for the quieting of title, and that it does not deraign title as the statute requires to which, there are several good answers.

1. The demurrers assume that this is a bill for the removal of clouds only; whereas it has incorporated the features: (1) a bill to quiet title of the common sort; (2) a bill for cancellation; (3) a bill of injunction; (4) a bill for general relief. Grant, *arguendo,* that it does not meet the requirements of the common bill to quiet title because it does not deraign complainant's title, etc. —yet still, the demurrers were properly overruled, for the reason that they were too broad. They were directed to the whole bill, and not especially to the bill in so far only as it purported to be a bill to remove cloud. If the facts stated showed any other equity (for instance an equity for an injunction), the bill as a whole was good, even if it did not conform to the statutory requirements of a bill to remove cloud.

2. It is not such a bill to remove clouds as comes within the statute, section 550. That section, notwithstanding the generality of its terms, evidently applies to the case only where a bill is filed to cancel a conveyance of some other document on which defendant asserts a wrongful claim of title. That is not the present bill. It does not seek any cancellation of any document; the gravamen of the bill is that the agreement of July, 1905, was valid and binding according to their terms, but that defendant is wrongfully pretending to a construction of them, and asserting rights under them which, by those terms and by the true meaning of them, it was not en-

titled to. It is a wrongful conduct on the part of the defendant which the bill seeks to have concluded by adjudication. The difference between the two things is noted by Mr. Pomeroy. 3 Pom. Equity, sec. 1345.

3. Even considering the bill as a technical bill to quiet title, etc., the doctrine of the common source does apply. The bill shows that defendants claim and alleged title is through complainant's title; it shows that complainant's title is the good title and complainant is the "true owner." True it also shows that those titles are in litigation, and that such litigation had not been terminated by September 1, 1910. But that may be, and still complainant may be the "true owner" and win out in the long run. Defendant cannot in this case challenge the complainant's title as the source of its own title or claim, because its claim is solely through the title of complainant. The fact that there is litigation with other parties does not entitle defendant to invoke the technical rule of practice.

4. The bill is good as an injunction bill; and as such the statute had no application whatever.

5. The same thing is true if the bill be considered as one for general relief.

*V. A. Griffith,* for appellee.

It makes no difference what name or appellation or tag may be fixed to the bill in this case, whether it be called a bill of peace or a bill *quia timet,* or a bill to quiet title, or a bill to remove cloud (which as to real estate is of course nothing different in essence from a bill for cancellation), an inspection of it shows that it is just such a bill as must come within the provisions of our practice, sections 500 and 501, Code. But that it is neither a bill of peace, nor a bill *quia timet,* nor a bill to quiet title under the original jurisdiction and practice in chancery. See 6 Pomeroy Equity Jurisprudence, ch. 25. That it is not a statutory bill to quiet title under section 549,

Code, is also apparent from an inspection of it, but if it were, it would fall under the demurrer interposed here. The language of the bill is plain, as note from last lines of paragraph four of said bill: "That thereby a cloud or doubt is cast on the title of your orators to said land—which hinders and delays your orators in the sale thereof." Compare this with the language, section 550, Code, and it will appear that the draftman of the bill must have had the Code open to him as he dictated his bill.

Appellants say that they are not seeking to cancel any document, but are seeking to have an adjudication against the wrongful construction put on the contract by us, in other words, to "remove our claim," that is all. But still they are within the statute which *inter alia* provides: "Such real owner may file a bill . . . to have such claim . . . removed from said title." The citations of appellants from Pomeroy makes no such distinction as asserted by appellants, for that quotation is: The use of the injunction to prevent acts which would create a cloud upon title is governed by the same rule which controls the remedy of removing cloud on title.

But under all forms of the bill, and under the original chancery practice, as well as our own present practice, in bills of this nature, whatever they may be called, the complainant must show affirmatively that he is the real owner of the paramount title; he must show, not any questionable or doubtful title, but that he has a perfect legal or equitable title; it is not a question of the defendant's right in the premises or whether the defendant has any, but the complainant is taking up the time and attention of the court and invoking its aid in his behalf, and so to do he must disclose in himself a perfect legal, or a perfect equitable, title—not one in serious dispute and litigation, admittedly so, with other parties. Here is what our court has said on this point in cases going back for years and years in an unbroken current of decisions.

*Zukoski* v. *McIntyre,* 93 Miss. 811: "Both by statute and under our decisions, it being required of complainant in his bill to remove clouds, that he have a perfect legal or equitable title, and Mrs. McIntyre having neither, it was error in the court to sustain her bill and declare Mrs. McIntyre the owner of the property and order the deed to Zukoski to be cancelled as a cloud."

*Lumber Co.* v. *Lumber Co.,* 87 Miss. 780, 781: "It is necessary that the bill of complaint shows the perfect fairness of complainant's own title. The bill of complaint in the instant case  .  .  .  contains no definite and specific statement of facts showning that it has a perfect legal or equitable title to the land  .  .  .  It avers that both parties 'claim title to said land by and through a common source from Mrs. Julia M. Randall.' But the attempted deraignment of complainant's title shows affirmatively that a fatal infirmity adheres thereto."

*Jones* v. *Rogers,* 85 Miss. 826: "Those general principles are that when a party comes into a court of equity and asks its active intervention to vest title in him, or to remove cloud from his title and cancel the title of defendant, it is incumbent upon him to allege and show that he has a perfect legal, or a perfect equitable title to the property; that if he fails in this, he must necessarily fail in his suit, as, without such a title, he is not the 'real owner,' within the contemplation and the very language of our statute (Code 1892, sec. 500) as was expressly held as far back as 1873, in the case of *Carlisle* v. *Tindall,* 49 Miss. 229, in construing the words 'real owner' used in Code 1871, sec. 975. And this regardless of whether the title of defendant be good or bad, valid or indifferent. Complainants in such cases have no reason to concern themselves about the title adversary, and cannot even bring it in question."

*Wilkinson* v. *Hiller,* 71 Miss. 679: "We cannot comprehend how the error of supposing that one proving no title may get relief in equity in this class of cases has

survived through so many years against a uniform series of decisions, beginning in the year 1848. If anything can be considered settled by decision, it is that complainant, seeking to cancel the title of his adversary, must show either a good legal or equitable title in himself.'' Citing 14 Mississippi cases.

*Chiles* v. *Gallagher,* 67 Miss. 423: ''There is no more serious or prevalent error than that which seems to exist in relation to the right of parties to exhibit bills to cancel cloud upon title. It is frequently assumed that if a complainant can show some antecedent claim however vague and unsubstantial, he may assail and dispel anything which is a cloud upon the real title. We cannot conceive what has given rise to this erroneous view, for it is settled by an unbroken current of decisions, that to enable a complainant to cancel the defendant's title as a cloud, he himself must show a perfect title legal or equitable, as would enable him, the title being a legal one, to recover against the defendant in an action of ejectment.''

*Hart* v. *Bloomfield,* 66 Miss. 105 and 106: ''It is well settled that a complainant seeking to secure cancellation of the title of defendant must show himself to be the owner, in law or in equity, of the subject-matter in dispute. If he is not, he has no reason to concern himself about the title of his adversary.''

*Handy* v. *Noonan,* 51 Miss. 170: ''In order to establish a claim to such relief, the complainant must show clearly the validity of his own title, and the invalidity of his opponents. Complainants must disclose in themselves a perfect equitable, or a complete legal title in the words of the statute, that they are the 'real owners.' ''

In some of these cases it will be noted that the argument was made to sustain the bill just as is made here, that there was a common source of title, as for instance, in the case of *Lumber Co.* v. *Lumber Co.,* 87 Miss., *supra,* wherein the reply was ''but the attempted deraignment

of complainant's title shows affirmatively that a fatal infirmity adheres therein.''

But it is said that the bill may be good as an injunction bill, or under the prayer of general relief. The same observation that complainants must show themselves clearly the owners of the perfect title, and not the doubtful owners, would most strongly apply in any application for injunction, and just as necessarily so for any general relief—though as to general relief it is familiar learning that complainant must point out under the prayer for general relief, just what particular relief they deem themselves entitled to. The court is not to hunt it out, neither is it incumbent on counsel for defendant. Such is not done in this case by appellants.

There is still another reason why this bill cannot be maintained and which is in effect reached by all four grounds of the demurrer, and that is, that a contract cannot be determined or rescinded by a party to it, unless he is in a position to demand a specific performance. *Baker* v. *Bishop Colony,* 45 Ill. 264; *Howe* v. *Hutchinson,* 105 Ill. 501.

We feel that the first three grounds of demurrer entirely dispose of this case, but as appellant seems to lay stress upon the fourth ground we follow into that ground, hoping however, to be as brief upon it as possible.

To arrive at a clear understanding of the provisions of these contracts as to perfecting title, and the time there, we begin with these elemental principles of law: (1) A purchaser under a contract calling for a "good and efficient warranty deed" may not be compelled to take title to land unless same be reasonably free from doubt as to a good and marketable title; (2) the duty to make such title good is upon the vendor and not upon the purchaser, and that it is the duty of the vendor to proceed without negligence in that regard; (3) in the absence of stipulations to the contrary, a reasonable time is allowed to make good title; and (4) that while the ven-

dor is proceeding to make good title, it is the vendee only that can complain of the unreasonableness of the time taken, or that such time has expired. In other words that the vendee can continue to waive (with the knowledge of vendor) the elapse of time. Sound business principles and considerations of good faith in dealing, as well as the law, approves and requires the enforcement, the observance of these obvious elementary rules. See numerous cases cited: 3 Green's Digest, Vendor & Purchaser, III., Performance of Contract, sec. 37, *et seq.*

Therefore when a stipulation is put in a contract, providing a period of time beyond which the vendee is not to be bound (just as in the instant case) "such a provision is designed for the benefit of the purchaser and cannot be taken advantage of by the vendor," because (1) the vendor is presumed to know the title, its defects and the means of perfecting it, while the former did not so know, and (2) because of the implied agreement on the part of vendor attached by law to every contract for the sale of land, to make good title to the land which is not implied as any duty upon the vendee.

"A condition in a contract of sale by which the contract is to be void in case the vendor cannot induce a good title, is to be taken most strongly against the vendor because he alone is able to judge the necessity of propriety of making a condition before he offers the property for sale." *Greaves* v. *Wilson,* 25 Beav. 290; *Page* v. *Adams,* 4 Beav. 269.

"Such a condition gives an option not to the vendor, but to the purchaser, to avoid the contract for failure to deduce a good title." *Roberts* v. *Wyatt,* 2 Taunt. 268; and it follows to the same effect that such failure at any given time is likewise at the option of the purchaser.

"When a contract is to be performed by a specified time but after it has passed the promisee urges the promisor to perform it, he thereby waives his right to avoid it, for failure of performance, or in the absence of

an unreasonable delay to perform after such request.''
*Moline Co.* v. *McDonald*, 38 Ill. App. 589.

''The default as to time may be waived by the conduct
of the other parties as by acts recognizing the contract
as subsisting,'' etc.   36 Cyc. 717.

''In all ordinary cases of contract for the sale of land
if there. is nothing special in its objects, subject-mat-
ters or terms, although a certain period of time is stipu-
lated for its completion, or for the execution of its
terms, equity treats the provisions as formal rather than
essential, and permits a party who has suffered the pe-
riod to elapse to perform such acts after the prescribed
date, and to compel a performance by the other party
notwithstanding his own delay.''   4 Pomeroy Eq., sec.
1408; 36 Cyc. 707; citing among others *Jones* v. *Logins,*
37 Miss. 546; 48 Cent. Dig. Vend. & Pur., sec. 121.

In equity time is not generally regarded as of the es-
sence and never so where waived by the party for whose
benefit reserved.

WHITFIELD, C.

The title of complainants should have been deraigned
in their bill.   We think the bill falls within the class
of bills to which sections 550 and 551 of the Code of
1906 apply.   We are also of the opinion that this clause,
to wit, ''All lands, titles to which are not perfected by
September 1, 1910, the second party, the appellee, is
released from buying,'' was manifestly intended for the
benefit of the appellee, if the appellee should insist upon
the performance of the contract and not elect to be re-
leased.   We think, under the terms of this. contract, the
appellee had that right.

PER CURIAM.   The above opinion is adopted as the
opinion of the court, and for the reasons therein indi-
cated the decree of the court below is affirmed, and the
cause remanded, to be proceeded with in accordance with
this opinion.

*Affirmed and remanded.*